**Manuel BALTAZAR, Jr., Appellant,**

v.

**George NEILL, Jr., Appellee.**

**No. 11043.**

Court of Civil Appeals of Texas.

Austin.

Feb. 6, 1963.

Rehearing Denied Feb. 27, 1963.

William G. Washington, Austin, for appellant.

Byrd, Davis & Eisenberg, Austin, for appellee.

PHILLIPS, Justice.

This is an appeal from the 98th District Court of Travis County, Texas, wherein George Neill, Jr., plaintiff in the trial court and hereinafter referred to as plaintiff, sued Manuel Baltazar, Jr., a minor, hereinafter referred to as defendant, for personal injuries received in an automobile collision on July 11, 1959 at the intersection of West Mary and South First Streets in Austin, Texas. The case was reviewed by this Court once before and was reversed and remanded for a new trial, Neill v. Baltazar, Tex.Civ.App., 345 S.W.2d 454, writ ref., n. r. e.

The evidence indicates that both the plaintiff and defendant were driving north on South First Street and approximately a block before reaching the intersection where the collision occurred, the plaintiff passed the defendant's vehicle and came to a complete stop at the stop sign. It was at this point that defendant's truck ran into the rear of the plaintiff's car. The defendant contends that while both he and the plaintiff stopped at the stop sign, the plaintiff started his car again, stopped it suddenly in the intersection and that it was at this point that the collision occurred. This variance will be discussed later.

The jury found that defendant failed to keep a proper distance between his truck and plaintiff's automobile, was driving his truck at an imprudent rate of speed, failed to properly apply his brakes, failed to keep a proper lookout and that all of these acts were a proximate cause of the collision. The jury also found that plaintiff did not fail to give a hand signal of his intention to stop, and did not fail to keep a proper lookout.

The jury found, in respect to damages, that the reasonable value of the necessary repairs to plaintiff's car was $250.00; that the reasonable value of his past medical expenses due to injury received in the accident was $833.00; that the reasonable value of his future medical expenses due to injuries received was $1,000.00; that the reasonable value of his past loss of earning capacity was $300.00 and his future loss was $1,500.00; that the reasonable value of his pain and suffering both past and future was $1,200.00.

The first four points of error will be considered together as they were grouped

in defendant's brief. These points are concerned with some eight automobile accidents that plaintiff had been involved in, five in the past and two after the accident that is the basis of this suit.

At the outset of the trial below, plaintiff made a motion to the court, objected to by the defendant, the part pertinent to this case being as follows:

"Since it is immaterial to this suit whether or not Plaintiff has been in prior automobile collisions or whether or not Defendant has not been in prior automobile collisions the defendant is precluded from using any pleading, testimony, remarks, questions or argument which might inform the jury of such facts."

The Court granted the motion.

Defendant does not contend that the prior accidents were offered to show negligence on the part of the plaintiff but they were offered to show prior abnormal physical condition or injury. Two doctors testified at length and the testimony of a third doctor given at the prior trial of this case was read into evidence. These doctors were plaintiff's witnesses, had examined and treated plaintiff and all three testified that in their opinion plaintiff had sustained bodily injury due to the impact of the collision in question. The injury described by the doctors was referred to in lay terms as a whiplash injury to the neck or, in medical terms an extension-flexion syndrome caused by trauma. The evidence showed that the plaintiff had been in pain at various times after the collision and had been hospitalized and treated on the advice of the doctors. There was also evidence that one of his arms had withered somewhat due to the injury received, and that he would be incapacitated to some degree in the future.

The only evidence in the record as to a possible prior injury or abnormal bodily condition of the plaintiff was brought out by defendant on cross-examination of the plaintiff's medical witnesses and their interpretation of certain x-rays. One of the doctors testified on cross-examination that he believed plaintiff to have had arthritis at the time of the accident. Another on cross-examination stated that, according to the radiologist's report from the hospital, the x-rays showed "mild lipping at the C-6 inner space. Straightening of the cervical spine. Otherwise normal appearing cervical spine. Minimal joint space narrowing with hypertrophic lipping is noted at the first thoracic inner space." The doctor reading this report stated under cross-examination that he himself was unable to see the defect mentioned in the radiologist's report, however that if the defect was present, it could have resulted from an old injury. Another medical witness for the plaintiff testified that the x-rays indicated plaintiff had arthritis and a narrowing of the vertebrae at one point when the accident happened. That the narrowing could have been caused by an accident in the past.

Defendant offered no testimony whatsoever to show a possible prior abnormal bodily condition or prior injury on the part of the plaintiff, other than the above mentioned cross-examination, leaving all of the doctors' testimony that plaintiff had received injury at the collision in question uncontroverted.

Plaintiff denied that he had been previously injured in an automobile accident.

Since defendant did not offer any suggested issues relative to prior injury or abnormal bodily condition it is somewhat uncertain as to whether he would have offered such matter as a defense to the alleged injury received by the plaintiff or in mitigation of the damages. We hold that the defendant would have been precluded from either route. Should the matter have been offered defensively the doctrine announced in Armour & Co. v. Tomlin, 60 S.W.2d 204, 205, Tex.Com.App., 1933, would apply in that even though the jury had found a prior injury or prior abnormal

bodily condition, inasmuch as they also found plaintiff had been injured in the collision by the negligence of the defendant and that such negligence was the proximate cause of the injury, the result reached in the trial court would not have been altered. Such findings would not have been inconsistent.

■ Should the defendant have offered the matter in mitigation of damages to show that the injury received in the collision merely aggravated a pre-existing injury or became additional damage to some pre-existing infirmity or bodily abnormality, he would have come under the doctrine announced in Dallas Ry. & Terminal Co. v. Orr, 147 Tex. 383, 215 S.W.2d 862, 1949, wherein the court announced the test to be (a) evidence of a definite infirmity on plaintiff's part aside from injury due to the accident; (b) evidence of causal connection—which might be close proximity in time—between such infirmity and some pain or disability suffered after the accident, and (c) confusing close " 'intermingling' between the infirmity not due to the accident and that due to the accident, so that the jury might be misled into awarding money for the total pain and disability accruing from both, rather than for that accruing only from the accident." We hold that there was insufficient evidence in the record to meet any of the tests enumerated in the Orr case. Consequently, inasmuch as defendant was unable to present sufficient evidence of a prior injury or physical abnormality that would have had a direct bearing on the alleged injury brought about by the accident in question, evidence of other accidents would have been meaningless. The trial court correctly excluded this testimony.

■ We further hold that since the defendant did not offer a suggested issue on prior physical condition, he waived this portion of his defense. Rule 279, Texas Rules of Civil Procedure.

Defendant assigns error to the fact that the jury's award to the plaintiff was excessive. We overrule this point. See 17 Tex. Jur.2d, sec. 333, page 407.

■ Defendant assigns error to argument by plaintiff's counsel in closing to the effect:

"you are not concerned with who pays whatever judgment the court may enter. That is no concern * * *."

and also:

" * * * when he stood here and told you, 'be careful, you are going to hurt somebody' he was not telling you the truth."

Defendant contends that the effect of these statements was to intimate to the jury the fact that defendant was insured, constituted a slur on counsel for the defendant and questioned his integrity. We overrule this point.

The defendant in this case was a minor. Throughout the trial a close member of his family was present.

During his argument, defendant's counsel pleaded with the jury to return a verdict that was completely fair and reasonable and something "that is not going to hurt anybody." A situation similar to this was passed on by this court in Renegar v. Cramer, 354 S.W.2d 663, Austin Civ.App., 1962, writ ref. n. r. e. concerning an argument, part of which, is as follows: "Of course, the Court is telling you not to be concerned with the actual effect of your answers, nor with who is actually going to pay your verdict or whether or not it will ever be paid."

In this case the court said:

"As to the argument first made, it must be remembered that the appellant was a girl not quite 15 years old. The natural question which would arise in a layman juror's mind would be the liability of the parents for a judgment against the girl. It is not a uniform settled question among the states. In

some states the parents, aside from agency, are responsible for damages resulting from negligent acts of their minor children in driving automobiles for family purposes. Texas is not among these states. (Citing cases.)

"The principal purpose of the argument first made, in our opinion, was to guard against the normal disinclination of a rational mind to punish one (the parents) who is without fault.

"Under the circumstances here, we do not regard such argument, reasonably considered, as intimating or implying that appellant was protected by insurance." (Citing cases.)

■ With regard to the part of the argument that possibly cast aspersions on defendant's counsel's integrity we hold in light of the entire record presented that such error was harmless. See Rule 434, T.R.C.P.

Defendant assigns error to the fact that the trial court failed to submit the following two special issues:

"Do you find from a preponderance of the evidence that the plaintiff, George Neill, Jr. immediately prior to the collision in question failed to give a signal of his intention to stop his automobile?"

and:

"Do you find from a preponderance of the evidence that at the time and on the occasion in question George Neill, Jr. stopped his automobile suddenly?"

On the former trial the jury found, among other things, that the plaintiff had stopped his automobile suddenly and that such was negligence and a proximate cause of the collision; that Neill failed to give an arm signal of his intention to stop, and that such failure was negligence but not a proximate cause of the collision. The trial court entered judgment on the verdict for the defendant. On reversing the trial court and remanding this cause for a new trial this court said:

"The appellant Neill was required to stop and was well within his legal rights to do so and to assume that appellee would not fail to observe the stop sign and would bring his truck to a stop and avoid colliding with the automobile. The appellant, as a matter of law, did not violate any legal duty to the appellee, who was behind him, by stopping at the traffic stop sign. (Citing cases.)

"We believe that the jury's findings of negligence on the part of appellant is against the great weight and preponderance of the evidence. We have considered all of the evidence in the record in making our determination in this respect." 345 S.W.2d 454.

This court has again reviewed the record made on the second trial of the case and can see no reason to change our opinion on this point. The evidence presented on the second trial was substantially the same as on the first.

With respect to the issue defendant requested concerning the alleged failure of the plaintiff to give a signal of his intention to stop, the court did submit the following issue to which the jury answered "no":

"Do you find from a preponderance of the evidence that immediately prior to the collision in question George Neill, Jr. failed to give a hand signal of his intention to stop his automobile?"

We hold that the court's ruling quoted above on the first appeal applied with equal force to this issue, however, substantially the same issue was presented to the jury and they found against the defendant. See Rule 279, T.R.C.P.

■ As stated at the outset of this opinion, defendant in his answer alleged that while plaintiff had stopped his car at the

stop sign and defendant had stopped behind him, plaintiff started his forward progress again, stopped suddenly in the intersection and that it was at this point that the defendant's truck struck the plaintiff's car. The only evidence to this effect in the record is the defendant's testimony. Defendant neither requested nor submitted an issue on this point; consequently, we will deem this defense to have been waived. Rule 279, T.R.C.P.

We overrule these assignments of error.

■ Defendant's last two points of error, briefed together deal with evidence admitted by the trial court, over appropriate objection, that plaintiff's wife made from between $45.00 and $50.00 per week working outside the home and that due to plaintiff's incapacity resulting from the accident plaintiff's wife had to quit these jobs and work in the plaintiff's place of business. That this point was argued to the jury as an element of the damages incurred. We find no error here and overrule these points.

In the Cramer case, cited above, we held that the evidence supported the finding that an injured wife would be unable to perform her usual household duties for the remainder of her life and a sum of money was allowed that would compensate her for costs of domestic help that she would incur in the future. The court said:

"We also observe that domestic work has value whether paid for in money, affection, or whether not paid for at all."

and further:

"The jury has great latitude in finding the present value of future damages." (Citing cases.)

■ We hold that the earnings of the wife under the facts presented were a proper element in arriving at the damages sought.

Affirmed.